IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

CHARLESTON HARRIS

:
:
:   Criminal No. DKC 15-0548-1
    Civil Action No. DKC 18-2936
:
:

**MEMORANDUM OPINION**

Presently pending and ready for resolution are the motion to vacate sentence filed by Petitioner Charleston Harris ("Petitioner"), as well as his requests to supplement. The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion will be denied, as will the requests to supplement.

**I.   Background**

On October 19, 2015, Petitioner was charged in an indictment with 1) conspiracy to engage in sex trafficking of a minor in violation of 18 U.S.C. § 1594(c)); 2) sex trafficking of a minor, under 18 U.S.C. §§ 1591(a),(b)(2); and 3) an attempt to do the same, under these same sub-sections. (ECF No. 1). Respondent United States of America ("the government") points out that "[e]ach of these charges carried with it a mandatory term of imprisonment of ten years and a maximum term of life. (ECF No. 173, at 1) (citing 18 U.S.C. § 1591(b)(2)).

On June 28, 2017, Petitioner pled guilty to the second count: sex trafficking of a minor, in an agreement pursuant to a Fed.R.Crim.P. 11(c)(1)(C)(a "C-Plea"). (ECF Nos. 106-108) (noting ECF 108 is a "Supplement" to the plea agreement, filed under seal). The parties stipulated to a term of imprisonment of "not less than 120 months and not more than 168 months." (ECF No. 107, ¶ 9). On October 18, 2017, Judge Titus sentenced Petitioner to 168 months' imprisonment, the high-end of the sentencing range agreed upon in the C-Plea and, after a subsequent hearing on restitution, an amended judgment was entered on January 11, 2018. (ECF No. 148). This conviction became final, at latest, January 25, 2018, when his time to appeal from the amended judgment expired.[1]

Petitioner first filed a motion to vacate his sentence under 28 U.S.C. § 2255 on September 21, 2018. (ECF No. 151).[2] That same

---

[1] *United States v. Sanders*, 247 F.3d 139, 142 (4th Cir. 2001), held that a conviction became final for § 2255 purposes on the date judgment was entered. However, after the Supreme Court decided *Clay v. United States*, 537 U.S. 522, 527 (2003), holding that finality attaches when the time for filing a certiorari petition expires, the *Sanders* holding has been called into question. Most courts now assume that, when no appeal is taken, a judgment becomes final when the time for filing such an appeal expires, which is 14 days later. *See Brown v. United States*, ELH-16-4075, 2017 WL 4946990, at *2 (D.Md. Nov. 1, 2017) (discussing this approach and citing more recent authority).

[2] This motion, as with Petitioner's others, gets the benefit of the "prison mailbox rule" in that it was "filed" as soon as it was placed into the prison mail system. As the benefit of an only slightly earlier filing date does not affect the timeliness of these motions, the date of docketing will be used for simplicity's sake.

day, however, Mr. Harris moved to hold this motion in abeyance, citing the fact that the Bureau of Prisons ("BOP") had him in transit and that a "fellow inmate" was assisting in the preparation of his legal documents.  (ECF No. 152).  In the interim, after the death of Judge Titus, the case was reassigned to this member of the bench, and an order was issued on March 15, 2019, explaining to Petitioner that his petition could not proceed as it was unsigned — mooting his request to hold his motion in abeyance — and granting him twenty-one days to cure this fatal defect. (ECF No. 153).  When no response was received by May 17, 2019, the motion was dismissed.  (ECF No. 154).

On September 30, 2019, the court received correspondence from petitioner, expressing his willingness to move forward with his petition but again citing delays, this time caused by his return to United States Penitentiary Allenwood.  (ECF No. 159).  A letter/order was sent to him there on October 8, 2019, advising him that in "light of your movement between institutions," he would be given "one final chance" to file a proper, signed § 2255 motion. (ECF No. 161).

Just under a month later, on November 4, 2019, Petitioner re-filed a motion to vacate the earlier dismissal of his § 2255 motion, that included a signed copy of that earlier motion (ECF No. 162-1, at 1-16), as well as a signed copy of his motion to hold this motion in abeyance.  (ECF No. 162-2) (signing ECF

3

No. 152).[3]  He also filed two supplements:  one that seeks to add a "new fact" and two new constitutional claims to his petition (ECF No. 163), and one that simply reiterates this allegedly newly discovered fact, but with no attendant legal arguments. (ECF No. 164).  On November 18, 2019, the Clerk was directed to reopen Petitioner's civil case and notice was sent to the government to respond to Petitioner's motion within sixty days. (ECF No. 165).  After an extension was granted, the government filed its response on March 13, 2020.  (ECF No. 173).  Following some apparent confusion by Mr. Harris as to the status of his petition, a letter was sent to him explaining that the government already had filed its response on March 13, 2020, but that the government would be directed to re-send its response to Petitioner. (ECF Nos. 176).  That same day, the government was ordered immediately to remail its opposition to Mr. Harris, and Petitioner was granted thirty days to respond, once it was sent.  (ECF No. 177).  After another extension was granted, this time at Petitioner's request, Petitioner filed his reply on August 31, 2020.  (ECF No. 185).

---

[3] This motion to hold his motion to vacate in abeyance was denied by order on March 15, 2019, however.  (ECF No. 153).  Despite attaching a signed copy of this motion, the Petitioner does not reference it in his motion to vacate the dismissal.  (*See generally* ECF No. 162).  Petitioner may have signed it simply to correct his previous omission and as one of the documents sent back to him for signature.  (*See* ECF No. 161).

## II.  Motion to Vacate Sentence

### A.  Claims Raised

Petitioner's motion to vacate his sentence advances two grounds for relief:  ineffective assistance of counsel in failing to advise him properly on his immigration status and inducing him to give up his purported citizenship in entering the plea agreement, and a constitutional violation in stripping him of his citizenship as part of the plea and judgment.

#### 1.  "Erroneous" Advice on Petitioner's Immigration Status

Petitioner's motion first argues that his former counsel violated "his Sixth Amendment right to counsel by erroneously advising him to surrender naturalized citizenship."  At the time, he claims he was continuing to seek a "certificate of citizenship," despite what he alleges was an unreasonable denial of his earlier application — an application he purports was statutorily eligible for approval based on his mother obtaining her citizenship on February 9, 1996, when Petitioner was still under eighteen years of age.  He argues that counsel "advised me to concede I was not a citizen of the United States" during plea negotiations, as "there was no proof that I was a citizen."

#### 2.  Constitutional Violation

Petitioner argues that the plea, and his counsel's failure to object to it, thereby violated the Fourteenth Amendment's Privileges or Immunities Clause in that the eventual deportation

5

contemplated by it denies his "still valid" citizenship. (ECF No. 162-1, at 7-8). The second ground for his motion follows a similar theory: Petitioner argues that because he was a citizen when he entered into his plea agreement, it deprived him "of his Constitutional right under Article IV, Section 2[1] [the Privileges *and* Immunities Clause]." (ECF No. 162-1, at 7-8).

### 3. Standards of Review — Ineffective Assistance of Counsel and Constitutional Violations

To establish ineffective assistance of counsel, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's conduct falls within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Strickland*, 466 U.S. at 688-89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). A determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from it. *Strickland*, 466 U.S. at 697.

In the context of a § 2255 petition challenging a conviction following a guilty plea, a defendant establishes prejudice by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985);

*accord United States v. Mooney*, 497 F.3d 397, 401 (4th Cir. 2007). Moreover, Petitioner "must convince the court" that such a decision "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). "The challenger's subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *United States v. Fugit*, 703 F.3d 248, 260 (4th Cir. 2012).

A petitioner who pleads guilty has an especially high burden in establishing an ineffective assistance claim. As the Supreme Court of the United States explained, "[t]he plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases . . . where witnesses and evidence were not presented in the first place." *Premo v. Moore*, 562 U.S. 115, 132 (2011). Thus, a petitioner alleging ineffective assistance in the context of a guilty plea must meet a "substantial burden . . . to avoid the plea[.]" *Id.*

Section 2255 requires a petitioner asserting constitutional error to prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." A *pro se* movant, such as Petitioner,

is entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–53 (4th Cir. 1978). But if the § 2255 motion, along with the files and records of the case, conclusively shows that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. § 2255(b).

**4.  Analysis**

The government asserts, as its central ground for dismissal, that Petitioner has never been a U.S. citizen, understood this in entering a plea that said as much, and testified to his satisfaction with counsel at his Rule 11 hearing. (ECF No. 173, at 5-9). In that sense, it argues that the entire motion is founded on a faulty premise. The government argues, moreover, that no rational person would have rejected the plea in Petitioner's situation and so no actual prejudice resulted; in the absence of such an agreement, the government argues it would have sought to prosecute Petitioner on all counts in his indictment. Each of these counts carried a ten-year mandatory minimum, and would put him, it estimates, in a sentencing guideline range of 235 to 293 months' incarceration if convicted, instead of the far lower range to which it stipulated in the plea.

Petitioner is clear in his reply that his former lawyer "Mr. Davis'[s] failure to form a derivative citizenship defense on behalf of Mr. Harris was prejudicial because otherwise Mr. Harris

8

would have elected to go to trial." (ECF No. 185, at 4-5). Whether or not a "rational person" would have made this choice need not be addressed, however, as the claim that Petitioner did not understand the immigration implications of his plea is foreclosed by his own sworn statements. *See United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false.") (internal quotation marks omitted)); (*See* ECF No. 173, at 4-5) (quoting *Fields v. Atty. Gen. of State of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.")).

The government includes portions of transcripts from Petitioner's rearraignment that show, among other things, that Mr. Davis explained to the court that the plea would "100%" result in his deportation to Liberia, and he understood that. Mr. Davis explained to the court that Petitioner "fell through the cracks," as his parents brought him over to the U.S. at age 9 but "didn't fill out the proper paperwork," and his subsequent applications have been rejected "a number of times." Judge Titus, speaking to Mr. Harris, reiterated that he had "indicated that you are a not a U.S. citizen," and so sought to make sure that he understood

that his plea could not only affect his immigration status but, by its explicit terms, would result in his deportation to Liberia. He responded, "Yes I do."  Petitioner also confirmed his full understanding of his plea and satisfaction with counsel to Judge Titus.  (ECF No. 173, at 5-9).

Any claim premised on Petitioner's purported belief that he was, nevertheless, a U.S. Citizen and not foreclosed from asserting this citizenship and challenging his eventual deportation is entirely contradicted by Petitioner's own sworn statements in the face of a plea agreement that was unequivocally clear on Petitioner's immigration status.  These statements show that Petitioner was satisfied with Mr. Davis' representation when he entered his plea and was fully aware that it would result in his deportation and foreclose any future attempt to assert his purported citizenship.

As the plea itself is said to have violated both the Privileges and Immunities Clause of Art. IV of the Constitution and the Privileges or Immunities Clause of the Fourteenth Amendment, however, Petitioner's constitutional claims must still be addressed.  Petitioner cannot, however, show by a preponderance of the evidence that he was a citizen when he entered into the plea.  Not only does he fail to satisfy that burden, but the government demonstrates that such a showing is impossible: he was never a citizen.

Petitioner argues in his motion that prior to his application for citizenship, his "mother—Veria Gbardee Saad, became a naturalized citizen on February 9, 1996." Having moved to live with her in the United States at the age of nine, Petitioner applied for citizenship on August 19, 1997, before he turned eighteen, and thus argues he "was statutorily eligible" under "Section 322" of the Immigration and Nationality Act to receive his citizenship, despite the fact that he concedes his application was denied, albeit "unreasonably," on October 28, 1997. (ECF No. 162-1, at 5-6) (citing 8 C.F.R. §322.2).

The relevant regulation in effect at the time of Petitioner's application, however, clearly states that a petitioner must "[b]e unmarried and under 18 years of age, both at the time of application *and at the time of admission to citizenship*." (8 C.F.R. §322.2(a)(1)(1997))(emphasis added). A letter from the Immigration and Naturalization Service, sent in October of 1997 to Mr. Harris, is attached to his main petition and explains as much. Largely corroborating the version of this history explained by Mr. Davis in Petitioner's plea hearing and detailed above, the letter informs Mr. Harris that although he was admitted as a "lawful permanent resident on November 8, 1989" and was under eighteen at the time the application was *received*, he subsequently turned eighteen and thereby became ineligible for citizenship; his

application, he was informed, was therefore being denied. (ECF No. 162-1, at 43-44).

His reply, nevertheless, reiterates his belief that simply because his mother became a naturalized citizen, he became a citizen outright as a "person born outside of the United States to parents who were born or naturalized in the United States is also a citizen of the U.S." (ECF No. 185, at 3) (citing to Merriam-Webster's Dictionary of Law (1996)). As such, he claims he "had no reason" to apply for "re-admission" into the United States as he has been here "since 1989 as a lawful citizen." (*Id*.).

Even accepting the accuracy and authority of this citation, such a statement clearly applies to those born to parents who are *already* citizens. Mr. Harris's mother did not become a naturalized citizen until well after his birth, and the very sub-section of Federal Regulations cited by Petitioner, at the time, clearly and unequivocally required an application be approved, and not just received, before the petitioner turned eighteen. That did not happen in Mr. Harris's case, as Petitioner was informed by letter and as his former counsel told the court. Petitioner has failed to show by a preponderance that he was a citizen, either at the time he entered the plea or any time prior. The main petition's constitutional and ineffective assistance of counsel claims are without merit and will be denied.

### B.   Supplemental Claims

Petitioner's first supplement to his motion to vacate, filed on the same day as the re-filed petition itself, seeks to add two free-standing claims as to why his conviction should be overturned.[4]  The government acknowledges this supplement but does not respond to these arguments.  (ECF No. 173, at 2).  Regardless, they may be dismissed as untimely as they were first filed on November 4, 2019, far more than a year after his conviction became final, and do not relate back to his timely claims.

Mr. Harris argues that the "Federal Government" violated "The Constitution's Separation of Powers" in granting the executive and judicial branches "'unfettered' discretion" to "'use' Information" when sentencing a person under 18 U.S.C. § 3661.  He argues that this is an unconstitutional balance of powers as "The Constitution assigns law making to Congress to define and ordain punishment." (ECF No. 163, at 2) (referring presumably to the legislative powers granted to Congress, U.S. Const. art. 1, § 1).  Petitioner asserts

---

[4] The second supplement, as mentioned, does not contain any substantive grounds to overturn his conviction, but instead points to a "New Fact," also included in the first supplement — the introduction by Senators Durbin and Grassley of the "Prohibiting Punishment of Acquitted Conduct Act of 2019."  (ECF No. 164). Although Petitioner's discussion of the proposed legislation does not clearly explain its import, review of the publicly available text of bill shows that it seeks to prohibit the consideration of "acquitted conduct" at sentencing.  Petitioner, however, does not explain how such a bill, even if passed, would affect (let alone overturn) his conviction or revive an otherwise untimely claim, as discussed more below.

that this discretion also somehow violates the Fifth Amendment's Grand Jury Clause, which states that, "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment." U.S. Const. amend. V. He similarly alleges that it violates the Sixth Amendment's Jury Clause, without elaboration — presumably arguing it violated his "right to a speedy and public trial, and by an impartial jury." U.S. Const. amend VI. Finally, the entire sentencing scheme, Petitioner argues, delegates power as "the Sentencing Commission is an arm of the Judicial Branch, not Congress" and thus is "repugnant" to the Constitution.[5] Even more vaguely, he argues that judicial discretion in sentencing "interfered with trial counsel's ability of how to independently conduct the defense at sentencing." Petitioner, however, does not explain what statutory or Constitutional provision this violates. (ECF No. 163, at 3).

These claims are not timely and so will not be considered on the merits. Pursuant to 28 U.S.C. § 2255(f), a federal prisoner

---

[5] In particular, he references the ability of the court to depart upwardly from the guidelines (ECF No. 163, at 2), but the plea calculates a final offense level of 33, which, even, if Petitioner was found to have no prior criminal history (Category I, although the plea is agnostic on this point, *see* ¶ 7), would subject him to a guideline range of 135-168 months, roughly approximating the sentencing range to which the parties agreed. Judge Titus's sentence occupies the highest possible of either range but does not represent a departure from the guidelines.

must file a motion to vacate, set aside, or correct his sentence within one year of the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;

> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

An otherwise untimely amendment to a timely claim is considered timely when it "relates back" because it arises out of the "conduct, transaction, or occurrence set forth . . . set forth in the original pleading." *Mayle v. Felix*, 545 U.S. 664, 649 (2005) (citing Fed.R.Civ.P. 15(c)(2)).

Petitioner's re-asserted main petition involves the same alleged deficiencies of counsel's performance raised in the timely, but unsigned, original petition filed on September 21, 2018 (ECF No. 151), it relates back and is timely. The claims in his first supplement, however, involve Judge Titus's use of statutorily approved discretion when sentencing Mr. Harris under

28 U.S.C. § 3661, and so they do not relate back to this original petition — these allegations surround alleged illegal conduct of the court, not counsel.  Petitioner attempts to get around the untimeliness of his supplemental claims by pointing to the alleged "new fact" involving proposed legislation to bar the consideration of acquitted conduct in sentencing, as discussed above.  (*See* ECF No. 163, at 1).  This alleged "fact," even if newly discovered, has absolutely no bearing on Petitioner's claims and does not cure their untimeliness.  The supplemental claims are barred from consideration as they do not relate back to the citizenship issue raised in Petitioner's first motion and are, therefore, untimely.

## III. Conclusion

For the foregoing reasons, the motion to vacate sentence filed by Petitioner Charleston Harris will be denied.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner.  A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order.  *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Where the court denies the petitioner's motion on its merits, a petitioner satisfies this

16

standard by demonstrating that "reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003). Where a motion is denied on a procedural ground, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and (2) that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (internal marks omitted).

After review of the record, it is clear that Petitioner does not satisfy the above standard as these claims are clearly deficient. No reasonable jurist would find the outcome on the merits of this main petition debatable or that the supplemental claims are clearly time-barred as a procedural matter. Accordingly, a certificate of appealability will not issue. A separate order will follow.

/s/

DEBORAH K. CHASANOW
United States District Judge
